**Federal Defenders**
OF NEW YORK, INC.

One Pierrepont Plaza-16th Floor, Brooklyn, NY 11201
Tel: (718) 330-1200 Fax: (718) 855-0760

David Patton
*Executive Director and Attorney-in-Chief*

Deirdre D. von Dornum
*Attorney-in-Charge*

February 8, 2021

**Via ECF and Email**
The Honorable Magistrate Judge Levy
United States District Court
Eastern District of New York
225 Cadman Plaza East
Brooklyn, New York 11201

Re:   <u>United States v. David Wright 20-CR-351 (SJ) (RML)</u>

Your Honor:

      I write to respectfully request that the Court reconsider releasing Mr. David Wright on bond pending trial or plea in the above captioned matter. Mr. Wright is a pretrial defendant currently detained at MDC Brooklyn since he first appeared before this Court on August 18, 2020. Mr. Wright is within the group of people the Centers for Disease Control and Prevention ("CDC") has categorized as most-at-risk for contracting COVID-19, a dangerous illness spreading rapidly across the world, throughout New York State, and within New York City and in particular at the MDC, where the number of positive inmates continues to steadily increase and an inmate recently died after contracting the virus.

      If the Court does not find that bail is appropriate in this case, Mr. Wright requests that the Court grant him temporary release. The Bail Reform Act provides for the "temporary release" of a person in pretrial custody "to the extent that the judicial officer determines such release to be necessary for preparation of the person's defense or for another compelling reason." 18 U.S.C. § 3142(i). The health risk to Mr. Wright because of his diagnosis asthma as well as the volatile and hazardous conditions at the MDC necessitate his release.

      Mr. Wright is prepared to submit to restrictive conditions, including location-monitored home incarceration at his father's home, third party custodianship via his aunt Ms. Wright and any other conditions that the Court feels are necessary to protect the safety of the public. Mr. Wright's family remains willing to sign a substantial bond reassuring that he return to Court and comply with conditions of his release. We believe that the stringent conditions proposed are sufficient to reasonably assure the safety of the community and Mr. Wright's appearance in court for the remainder of his case and that the continuing increase in the number of positive cases of COVID-19 at the MDC are changed circumstances that allow the Court to reconsider its prior decision to detain Mr. Wright.

**Background**

David Wright is before this Court currently charged with one count of felony in possession of ammunition in violation of 18 U.S.C. § 922(g). He was arrested on August 18, 2020. This Court has previously considered Mr. Wright's bail application, ultimately deciding to continue to detain Mr. Wright primarily based on the nature and circumstances of the offense as well his criminal history.[1] Since his arrest Mr. Wright has been incarcerated at the MDC.

As the Court is fully aware, we are in the midst of a public health crisis because of a resurgence of COVID-19 nationwide, and in particular at the MDC. As of the writing of this motion, 79 inmates at the MDC currently have the virus, and 27 members of the staff have also tested positive.[2] Covid-19 infected 642,557 New York City residents and taken the lives of 27,768.[3] While New York City's numbers continue to increase, new more contagious variants of the virus have emerged and lockdowns have continued, the infection rate within the Bureau of Prisons remains remarkably high, with the virus continuing to ravage through the MDC despite the introduction of the vaccine. While the vaccine has been introduced in the facility, the effectiveness of the vaccine is not instantaneous, a fact painfully illustrated by the death of an inmate just last week.[4] Mr. Wright was diagnosed with asthma as a child and continues to suffer from this condition. Asthma places Mr. Wright at a higher risk for "getting very sick" from COVID-19.[5]

**Legal Standard**

In deciding whether to release Mr. Wright on bail, this Court "should bear in mind that it is only a 'limited group of offenders who should be denied bail pending trial." *United States v. Shakur*, 817 F.2d 189, 195 (2d Cir. 1987). To detain Mr. Wright, the government must prove that Mr. Wright poses a serious risk of flight or prove by clear and convincing evidence that he is a danger to the community. *See* 18 U.S.C. Section 3142 (d) (2). The government must also show that there are no condition or combination of conditions which will reasonably assure Mr. Wright's appearance and the safety of the community. The factors enumerated in 18 U.S.C Section 3142 (g) (3) cut against Wright's detention – his history and personal characteristics illustrate that there are conditions of release that would both assure his appearance and protect the safety of the community.

---

[1] *See* Docket Entry dated November 1, 2020.
[2] Federal Bureau of Prisons: Covid-19 Cases, at: https://www.bop.gov/coronavirus/ , last updated February 9, 2021
[3] https://www.nytimes.com/interactive/2020/nyregion/new-york-city-coronavirus-cases.html
[4] *First inmate to die of COVID at Brooklyn federal jail was vaccinated days before testing positive for virus,* New York Daily News (Feb. 8 2021), *at* https://www.nydailynews.com/new-york/ny-edwin-segarra-inmate-mdc-brooklyn-covid19-dead-vaccinated-20210208-ovtvqfmwfzcd7drjoyq6zqluyq-story.html
[5] *People Who Are At Higher Risk: People With Moderate to Severe Asthma*, Centers for Disease Control and Prevention (Apr. 2, 2020), *at* https://www.cdc.gov/coronavirus/2019-ncov/need-extra-precautions/asthma.html.

A. Mr. Wright is not a serious risk of flight

Mr. Wright has incredibly strong community ties that illustrate that he is not a risk of flight and has every incentive to remain in the jurisdiction and appear at all future court appearances. In finding a serious risk of flight, courts have required more than evidence of a serious crime and the potential for a long sentence. *United States v. Friedman*, 837 F.2d 48, 49 (2d Cir. 1988).

As the Court heard at Mr. Wright's prior bail hearing, he has the support of a number of family members, all willing to be suretors. He is married with two children and two stepchildren, their youngest child only 10 months old. Mr. Wright's aunt, Joyce Wright, a former NYPD crossing guard, is willing and able to act as a third party custodian, reporting to the Court should he be found to be non-compliant. His three sisters, all of whom he shares a close relationship with, are also willing to sign the bond. His father, who suffers from cancer, also lives in Brooklyn, and if released the Court could order that Mr. Wright reside in his home and help with his day to day care. Mr. Wright has no passport and he has never even left the country. He is not a flight risk. Mr. Wright is amenable to home detention, where Pretrial Services would be able to monitor him continuously.

B. Mr. Wright does not pose a danger to the community

There is no question that the crime that Mr. Wright is accused of is a very serious crime. However, that fact, on its own does not mean that there are no appropriate conditions upon which he can be released. There are conditions that the Court can fashion to ensure the safety of the community through Pretrial Services.

The Court has in the past expressed concerns over Mr. Wright's criminal history, in particular, the charge he incurred for failure to register as a sex offender, and what the Court viewed as continued non-compliance with his registration requirements. While Mr. Wright does have some criminal history, it is not extensive and the more serious offenses are from over a decade ago. Mr. Wright incurred a series of convictions before he turned 20 years old, including the sex offense which has requires him to register. His last serious conviction was 11 years ago and notably a non-violent drug crime. Mr. Wright was last convicted of failure to register his address in 2017, after having been in compliance with all of his registration requirements since his release from incarceration for his 2002 conviction. He understands and takes seriously the Court's concerns about him being in complete compliance with registration requirements and this additional requirement can be made a part of his pretrial conditions if the Court would consider his release. In the interim, since his 2002 conviction, Mr. Wright has not been arrested or convicted for any similar type of offense – while a serious mistake – it is one he made when he was 19 years old that he continues to live with and has learned an important lesson from.

C. The Temporary Release of Mr. Wright Would be an Appropriate Alternative in this Case

The Bail Reform Act also provides for the "temporary release" of a person in pretrial custody "to the extent that the judicial officer determines such release to be necessary for preparation of the person's defense or for another compelling reason." 18 U.S.C. § 3142(i). The present ban on legal visitation at the MDC is impacting the defense's ability to work on Mr.

Wright's case. Discussions about plea negotiations, possible trial strategy and review of discovery is hampered by the current inability for in person meetings. Courts have found that temporary release is appropriate to protect a defendant's Sixth Amendment right to counsel. *See United States v. Rodriguez*, 2014 WL 4094561 (W.D.N.Y. 2014); *United States v. Stephens*, No. 15-CR-95, Dkt. No 2798 (S.D.N.Y. Mar. 19, 2020); *United States v. Chandler*, 19-CR-867, Dkt. No. 19 (S.D.N.Y March 31, 2020). Further the ongoing inability for Mr. Wright to see his family, or communicate with them regularly due to the lockdowns at the facility, have made it difficult for him to feel support in making important decisions in his case.

      The risks associated with COVID- 19 if Mr. Wright remains detained present a compelling, "exceptional reason" that support release. The unprecedented and extraordinarily dangerous nature of the COVID-19 pandemic cannot be overstated. People in jails and prisons cannot practice social distancing, control their exposure to large groups, practice increased hygiene, wear protective clothing, obtain specific products for cleaning and laundry, avoid frequently touched surfaces, or sanitize their own environment." *United States v. Skelos*, 2020 WL 1847558, at *1 (S.D.N.Y. Apr. 12, 2020). The BOP has yet to implement widespread testing, meaning that the numbers reflected on their website likely understate the true figures. It is plain that many people in BOP are asymptomatic and positive, or even symptomatic and positive, but untested. While vaccination has begun at the facility, many folks have not yet received their first dose and the vaccine will not become effective until several weeks after both doses are received, with a nearly month long period in between the administration of the first dose and the second dose.

      Mr. Wright is particularly vulnerable to COVID-19 because he is asthmatic. Doctors warn that "asthma is an inflammatory disease, with respiratory infection being one of the most common causes for exacerbation. This means patients with asthma may experience exacerbation of their asthma as well as the usual effects of COVID-19."[6] Mr. Wright's medical condition leaves him more vulnerable to getting very sick inside of MDC Brooklyn. According to the CDC, asthma is a condition that increases the risk of "getting very sick from COVID-19."[7] According to one doctor from the American Lung Association, the most important thing for people with asthma to do is to "rigorously follow the social distancing recommendations. Stay home, avoid others, wash your hands."[8] As noted above, it is impossible for anyone confined in MDC to follow these directives.

---

[6] Claire Gillespie, *People With Asthma Have a Higher Risk of Coronavirus Complications— Here's What to Know*, Health (Mar. 27, 2020), *at* https://www.health.com/condition/infectious-diseases/coronavirus/people-with-asthma-have-higher-risk-coronavirus (quoting Jack Stewart, MD, pulmonologist at St. Joseph Hospital in Orange County, California).

[7] *People with Moderate to Severe Asthma*, Centers for Disease Control and Prevention, *at* https://www.cdc.gov/coronavirus/2019-ncov/need-extra-precautions/asthma.html?CDC_AA_refVal=https%3A%2F%2Fwww.cdc.gov%2Fcoronavirus%2F2019-ncov%2Fspecific-groups%2Fasthma.html

[8] *How Does Coronoavirus Affect Asthma Sufferers?*, Fox News (March 20, 2020) *at* https://www.foxnews.com/health/how-does-coronavirus-affect-asthma-sufferers

The judiciary has recognized and addressed this exceptional and unprecedented crisis and how inmates are at risk. Judges in the Eastern District have released previously-detained defendants based in part on the risks posed to them by COVID-19 if detained. *See, e.g., United States v. Eli*, 20-CR-50 (RJD) (RER) (releasing, over government objection, defendant charged with multiple robberies involving guns and drugs, because of COVID risk); *United States v. Woolfolk*, 18-CR-115 (DLI) (RER) (releasing, over government objection, defendant with epilepsy to a shelter); *United States v. George*, 19-CR-327 (ENV) (releasing, over government objection, defendant exhibiting COVID-like symptoms who jumped out a second floor window to avoid arrest); *United States v. Rivera*, 11-CR-2 (RJD) (RER) (releasing, over probation objection, VOSR defendant without pre-existing conditions); *United States v. Plasencia*, 20-MJ-205 (SJB) (releasing, on consent, defendant charged with illegal possession of a firearm after having been previously convicted of a felony attempted armed robbery, and whose initial application for bail was denied, because of the COVID pandemic); *United States v. DeAlba*, 19-CR-563 (DLI) (SJB) (releasing, on consent, defendant charged in heroin and methamphetamine due to a combination of medical conditions, none on the CDC list); *United States v. Barrett*, 19-CR-436 (KAM) (releasing, on consent, defendant charged with Medicare and Medicaid fraud and conspiracy to defraud the United States, due to the COVID pandemic); *United States v. McKenzie*, 20-CR-120 (WFK) (releasing, on consent, defendant with asthma in passport fraud case); *United States v. Sienkiewicz*, 19-MJ-859 (JO) (releasing, on consent, defendant in extradition matter); *United States v. Grubisich*, 19-CR-102 (RJD) (SMG) (removing unmet prior requirement of a fifth suretor to release defendant); *see also United States v. Capaldo*, 19-CR-442 (ILG) (MKB); *United States v. Khan*, 20-CR-127 (LDH); *United States v. Espinal*, 17-CR-231 (RRM) (RER); *United States v. Ocasio*, 17-CR-323 (LDH); *United States v. Mundo*, 17-CR-125 (LDH) (CLP).

One less person at the MDC creates a safer environment at the jail and for the specific individual. This is a compelling factor that must be considered and weighs in favor of Mr. Wright's release.

Setting even the dangers of COVID-19 aside, the environment caused by the intense and ongoing lockdowns at the MDC are a reason to reconsider Mr. Wright's detention. With the numbers of positive COVID-19 inmates steadily increasing, there is no expected timeline as to when lockdowns will end. Legal and social visits have been suspended but also, inmates have been locked into their cells, unable to leave but for short periods of time a few days a week, often just to shower. Reports of the conditions in the MDC continue to be bleak, detailing dangerous and hazardous conditions and the MDC's inability to provide basic care to inmates who are sick or control the rapid spread of the virus.[9]

**Proposed Bail Package**

If released, Mr. Wright would reside at his wife or his father's home in Brooklyn. Mr. Wright would consent to conditions of home confinement and special requirements that he provide proof of his registration, as well as any other conditions deemed necessary by Pretrial

---

[9] *55 Inmates in Single Unit at Brooklyn Jail Have COVID-19, as Feds Struggle to Separate the Sick from the Healthy*, New York Daily News (December 7, 2020) available at: https://www.nydailynews.com/coronavirus/ny-covid-outbreak-inmates-brooklyn-jail-sick-20201207-knkl6fshnjfrlatz7sdsbhkxly-story.html

services and the Court. His three sisters, aunt and wife still remain willing and able to sign a bond of 100,000 dollars were he to be released, with his aunt acting as a third party custodian. Were Mr. Wright to violate any conditions of his bond or fail to appear in Court, he would be placing his family in grave financial harm.

**Conclusion**

Mr. Wright is among the vulnerable population at heightened risk of getting very sick from this illness. He asks that the Court consider granting his release even if only temporarily during this period where the conditions at the MDC have deteriorated because of the health pandemic and recent lockdowns jeopardizing his health and safety.

Thank you for your consideration. We are available for a telephonic or videoconference at the Court's convenience.

Respectfully submitted,

/s/
Amanda David, Esq.
Assistant Federal Defenders
(646) 276-8552

cc: AUSA Jack Dennehy (by email and ECF)